## BOUND *v.* SOUTH CAROLINA RY. Co. *et al.*

### *(Circuit Court, D. South Carolina. June 9, 1892.)*

DUTIES OF TRUSTEES—GOOD FAITH—RAILROAD MORTGAGE.
> Where the trustees in a railroad mortgage are empowered, under certain circumstances, to declare all the bonds secured thereby to be past due, they are bound to exercise this power with the utmost good faith, and only when approved by their honest, disinterested judgment, as the best thing for the interest of the bondholders.

2. RAILROAD MORTGAGE—FORECLOSURE.
> Where most of the lien holders of a railroad are urging a sale, and it appears that, in spite of the exercise of ability and great economy by a receiver during the past three years, no interest has been paid on any of the securities for a year, the property will be ordered sold, although the sale is opposed by one class of bondholders.

In Equity. Bill by Frederick W. Bound against the South Carolina Railway Company and others for the foreclosure of the second mortgage thereon. Decree of sale.

For former decisions rendered in the course of this litigation, see 43 Fed. Rep. 404, 46 Fed. Rep. 315, 47 Fed. Rep. 30, and 50 Fed. Rep. 312.

*Mitchell & Smith,* for complainant.

*Wheeler H. Peckham, Louis C. Ledyard, E. Ellory Anderson, I. W. Dilloway, Smythe & Leo, S. Lord, T. W. Bacon,* and *Asher D. Cohen,* for defendants.

SIMONTON, District Judge. This bill is filed in behalf of second mortgage bondholders of the South Carolina Railway Company, praying foreclosure of that mortgage. The railroad property of the defendant was purchased at a sale ordered in this court, foreclosing a mortgage of the South Carolina Railroad Company. This property is now covered by several liens. The first is the lien of certain bonds of the Louisville, Cincinnati & Charleston Railroad Company, (afterwards called the "South Carolina Railroad Company,") created by statute. This lien is now represented by the claim of Henry Thomas Coghlan, which has been reduced to a decree, and at present, with interest, is about $67,000. The next in rank is the lien of a mortgage of the South Carolina Railroad Company to Walker and others, trustees. Of the bonds secured by this lien there are outstanding, past due, $253,825.31. Next comes the lien of the consolidated first mortgage of the South Carolina Railway Company securing bonds of the par value of $5,000,000. The interest on all the bonds secured by these liens has been paid, except for the past year. The next lien is that of the second mortgage bonds of the South

Carolina Railway Company, to which class complainant belongs. Then come income bonds and the stock. No interest has been paid on the second mortgage bonds or the income bonds since July, 1888. The bill made the railway company, the trustees of the Walker mortgage, the trustees of the first consolidated mortgage, Barnes & Sloan, the trustees of the second mortgage, and the trustees of the income bonds, and also Henry Thomas Coghlan, defendants. Cross bills have been filed by Barnes & Sloan, trustees, by Walker *et al.*, trustees, and by Coghlan. Certain holders of first consolidated mortgage bonds, Smith and others, upon petition showing reason therefor, were permitted to come in and appear in behalf of themselves and certain other bondholders of the same class and of like mind as themselves, and they also have filed a cross bill. Barnes & Sloan, trustees of the first consolidated mortgage, after service of the bill filed in this cause, and before answering, exercised the power given them in their mortgage, and declared all the consolidated first mortgage bonds past due. They then filed their cross bill, praying foreclosure of their mortgage. The cross bill of Smith and others, bondholders, under this mortgage, antagonize the position of these trustees, aver that the act declaring the bonds past due was ill advised, in fact an improper exercise of the power uncalled for, operative only of injury to the *cestui que trust*, and void. They pray that the mortgage be not foreclosed. The cross bill of Walker and others, trustees, prays the foreclosure of their mortgage. Coghlan asks that a sale be had of all the mortgaged property to realize his debt. The income bondholders and the company concur in the prayer that the property be sold.

At the hearing the first question discussed was that between the trustees of the first consolidated mortgage and the bondholders, their *cestuis que trustent*, who arraign and antagonize their action in declaring the bonds past due, and seeking a foreclosure of the mortgage. This question was argued at length, and with great ability. There can be no doubt that, however large the discretion of trustees may be in the exercise and execution of their trusts, the court never loses its power to review the use of this discretion, and, if need be, to correct any abuse in its exercise. Perry, Trusts, § 511, and cases quoted. Compare *Michoud* v. *Girod*, 4 How. 554; *Wormley* v. *Wormley*, 8 Wheat. 441; *Oliver* v. *Piaatt*, 3 How. 400; *Markey* v. *Langley*, 92 U. S. 142; *Pray* v. *Belt*, 1 Pet. 670. A trustee, in dealing with his *cestui que trust*, or in the management of the trust estate, must always show *uberrima fides*. He must never lose sight of the fact that he is acting for another, who is the real beneficiary; and no thought or hope or purpose of personal advantage can have part in the motive for or in the result of his act. Perry, Trusts, § 427. If discretion be given to him by the instrument creating the trust, "this discretion may be likened to that of judges. It is not arbitrary discretion. It does not include the unrestrained power to do what the trustee pleases. To extend it that far is to make it a means of destroying the trust which it was intended to aid and maintain. The trustee, instead of doing merely what in his present circumstances he chooses to do in deference to his interests or inclinations, is to do that

which his honest, disinterested judgment approves, or ought to approve." He must not act under the impulse of fraud, collusion, or self-interest." Freeman's Note to *Read* v. *Patterson*, 6 Amer. St. Rep. 885, 14 Atl. Rep. 490. No actual fraud or collusion is charged. The objection to the action upon the part of the trustees is that it was dictated or controlled by self-interest. It is alleged that the trustees Barnes & Sloan used their discretion in disregard of the interest of the holders of first consolidated mortgage bonds, against their interest in fact, and in the interest of junior securities, of which Sloan was a large holder, and for whom Barnes was a trustee under the second mortgage, as well as a holder of bonds under this second mortgage. The inquiry is, were they biased by their interest? Neither of them owned a first consolidated mortgage bond, or any prior securities. Both of them were interested in junior securities. Upon notification of this suit by Bound they declared all of the first consolidated mortgage bonds past due. As the necessary result of this, the negotiability of the bonds and their value as an investment were at once destroyed. If the failure to pay coupons had depressed their market value, this action tended to depress them still more. In fact it made it the chief interest of every holder of such bonds to press foreclosure and sale of the railroad property, so as to realize their principal as soon as practicable. Those whose necessities prevented the ability to await this result had no other alternative than to sell upon a depressed market. Nor was this action on the part of the trustees essential to secure payment of the bonds in case of a sale of the road, or to compel a sale of the road, and so foreclosing the first mortgage. One coupon was past due. The aggregate was $150,000. This would have sustained a cross bill for foreclosure of that mortgage. If such a bill was sustained, and a decree of foreclosure prepared, then the bonds could have been declared past due, or the court would have ordered the net proceeds of sale applied to them. The effect of the declaration was to make a foreclosure inevitable, and to prevent any examination or investigation into the causes of the apparent insolvency of the company. This insolvency may have been occasioned by bad and extravagant management. The correction of this may have saved the credit and solvency of the road. The action of the trustees shut out any practical result from any investigation. The trustees acted *suo motu*, without consulting a single first mortgage bondholder. On the other hand, the declaration was clearly to the interest of junior securities. It assisted materially the scheme of reorganization which had been suggested and was languishing, whereby the first mortgage bondholders were required to give up 1 per cent. of interest per annum,—take 5 per cent. instead of 6 per cent. bonds,—and thus lighten the load of the junior securities. There must have been other advantages to these junior securities, for all of them are here favoring this declaration. Yet Mr. Barnes, as trustee for the second mortgage, when asked to pursue the same course and exercise the same power with regard to the second mortgage bonds, refused to do so. It would thus appear that this act was without any advantage to the first mortgage, and may have been of advantage to the junior

securities. It is difficult to escape the conclusion that the trustees, owners, and guardians of junior securities, unconsciously it may be, were influenced by their own personal interest, and were blinded as to the interest of their *cestui que trust.*

In the view which we take of the case, the further discussion of this question is unnecessary. The prayer of the cross bill of Walker *et al.*, trustees, and that of Coghlan, are not resisted. They are entitled to their money. As the railroad property is a unit, and is valuable for this reason, it will not be advisable, were it possible, to sell a part of it to satisfy these claims. It is to the interest of all parties that if a sale be had it must be of the whole. If the sale be postponed, such postponement would be in the interest of the holders of a part of the first consolidated mortgage bonds, and against the wishes of the holders of all other securities and of the railway company. The experience of the past three years shows the exercise of great economy and ability by the receiver and his subordinates. With the exception of the current year, the business has been excellent. Yet all the earnings have been needed for the equipment of the road, and for keeping it in proper order and repair. The surplus has, from time to time, been applied to the interest on the oldest securities and the past-due coupons of the first consolidated mortgage. The interest on all these securities is in default one year. No interest whatever has been paid upon the junior securities. It is true that the money expended upon the road has made the whole property much more valuable, and to this extent all the securities are benefited. But primarily the senior securities enjoy the benefit of these expenditures. And it would be inequitable to deprive the junior securities of any advantage which might be derived from an enhanced price at a sale, and a recovery of a part at least of their principal. A postponement of the sale, therefore, may do no good to any but a class of the secured creditors, and may be a great injury to every other class. Where there are two classes of creditors before the court, one of which is safe at all events, and the safety of the other is doubtful, the latter class are entitled to the consideration and care of the court. All parties in interest are before us. A decree will be passed for the sale of all the property covered by the several liens and mortgages ascertained and mentioned, in which provision shall be made declaring all first consolidated mortgage bonds entitled to payment as if past due, which decree shall provide for a sufficient cash payment to meet the costs and expenses of the case, and to liquidate the obligations of the receiver which have been entered into with the sanction of the court.

BOND, Circuit Judge, concurs.