**Richmond.**

TROUT AND OTHERS v. PRATT.

January 17, 1907.

Absent, Buchanan, J.

1. WILLS—*Construction—Devise to Wife for Benefit of Herself and Children—Refusing to Qualify as Executrix.*—A testator devised and bequeathed the whole of his estate, after the payment of debts, to his wife "to be used and managed by her for the mutual benefit of herself and our children," but if she should marry, then she was to take only what the law allows a widow. She was authorized to make advancements to the children from time to time as circumstances might require, and upon her death or marriage "the estate which she may not have disposed of" was directed to be divided among his children, share and share alike, each one, however, accounting for advancements made by her under the power conferred by the will. The wife was appointed executrix, but refused to qualify as such. *Held:* The wife is entitled during her widowhood to the whole of the rents and income of the estate, and there is no trust for the benefit of the children with respect to such rents and income; and by refusing to qualify as executrix she did not surrender any of the powers given to her under the will except those relating strictly to the office of executrix.

2. WILLS—*Advancements—Discretionary Powers—Supervision.*—Where a husband by his will confers upon his widow the power "to make advances or give such aid to our children as circumstances may from time to time require," and requires her to keep an account thereof "so that they shall enjoy as nearly as possible in equal degree the estate I may leave," the children have no right to demand that they be advanced the same amounts, but the widow is clothed with discretionary power as to the amount to be advanced to each, which a court of equity cannot control or review in the absence of bad faith on her part, or abuse of the confidence reposed in her. The equality intended by the will is in the final distribution.

Appeal from a decree in chancery of the Corporation Court

of the city of Staunton.   Decree for the female complainant.
Defendants appeal.

*Reversed.*

The opinion states the case.

*Fitzhugh Elder* and *A. A. Phlegar,* for the appellants.

*Braxton, Ker & McCoy,* for the appellee

KEITH, P., delivered the opinion of the Court.          ·   ·

The bill in this case was filed in the Corporation Court of the
city of Staunton by William Pratt and his wife, Catherine, who
before her marriage was Catherine Trout, to have the will of
Philip H. Trout construed.

The testator devised to his wife, Olivia Benson Trout, all his
estate, real, personal and mixed, wherever situated, "which may
remain after paying my debts, to be used and managed by her
for the mutual benefit of herself and our children, upon these
conditions, however:

"First. Should she marry, then she shall take only what the
law allows a widow.   This is not to be understood as any re-
straint upon her, or disapproval of her so doing, but for reasons
which I am sure she must understand and appreciate.

"Second.   She is desired to make advances or give such aid
to our children as circumstances may from time to time require, ·
keeping an account thereof so as that they shall enjoy as nearly
as possible in equal degree the estate I may leave, taking care
not to so diminish the estate during her life as that she cannot
derive from it an income sufficient to render herself and those
of our children who may be with her independent.

"Third.   If in the opinion of my wife the comfort of any
one or more of our children shall seem to require it she may by
will, deed or other instrument appoint a trustee or trustees to
whom the estate she may advance as aforesaid, or which may

be distributed after her death, shall be entrusted for the use of such child or children, to be governed by such regulations or provisions as she in her discretion may provide.

"After the death of my wife the estate which she may not have disposed of shall be equally divided among my children, share and share alike, each one, however, to account for any advances which may be charged against them severally.

"The same disposition shall be made of my estate should my wife marry.

"My wife is hereby empowered to sell or exchange any portion of the estate, when she may deem it prudent so to do (the purchasers not to see to the application of the proceeds), the property or estate so to be acquired to be considered and held as part of my estate."

"I nominate my wife as my executrix, and the court will dispense with security in her official bond, and no inventory of the estate to be required."

The testator left, in addition to the female plaintiff, four other children and his widow. The widow declined to qualify as executrix, but assumed the burden and execution of the trusts imposed upon her. From time to time she made advances to certain of her children, all of whom, whether advanced by her or not, approved the manner in which the duties imposed upon her had been discharged, except her daughter, Catherine, who intermarried with William A. Pratt.

Her contention is that by the true construction of the will all the property of the testator was given to his widow, subject to the payment of his debts, until her death or remarriage, "as trustee, in trust for herself and all of the testator's said children, and that the beneficial interest in the whole of said estate, during said period, belongs absolutely to the said widow and all the testator's children in equal shares, the widow taking a child's share; that while the said widow, during her life or widowhood, was intrusted by said will with the management and control of the testator's said property, and was authorized

from time to time, under certain circumstances, to make advancements out of the corpus of the said estate, to one or more of the children on account of their distributive share of such corpus, yet that the said widow was given by the said will no right or power to otherwise divert or dispose of said property, and was required to keep a correct account of all advancements she may from time to time make to any one or more of said children, to the end that no child receive more than his or her equal share of either the corpus, or the usufruct, of said estate; and that the said widow was not authorized to advance or pay to any one or more of the said children, at any time, any more than his or her equal share of the said corpus, or current usufruct, of said estate."

On the other hand it was contended that the testator, by his will, gave all of his estate to his wife, Olivia B. Trout, during the term of her natural life, subject to be defeated by her subsequent marriage, with certain powers of advancement in the will set forth, and that the estate in the remainder of the property, at the death of the widow, was given to the children of testator and his wife, share and share alike.

The Corporation Court decreed that the widow took "no interest in his estate, real or personal, except the use of the rents and incomes from said estate, and that in connection with the testator's children that live, or may hereafter live, with said widow, for her and their maintenance during the life and widowhood of the said Olivia B. Trout; but it is not the purpose of the court at this time to give to such of the testator's children as choose to avail themselves of the privilege the right at their election to return to the home and to be supported as constituting a part of it. The court reserves the right hereafter to determine when and under what circumstances this right should be exercised." And the court was further of opinion that the widow, "subject to limitations in this decree elsewhere imposed, is entitled to the free and unrestricted use of the rents and profits arising from said estate during her life, or until remar-

ried, but without power in her to use or encroach upon the corpus of said estate except in the way of advancements to the testator's children"; and further, that "upon the death of said widow, not having remarried, the whole of the testator's estate passes to . . . the children of P. H. Trout, deceased, share and share alike, each of said children, however, accounting for such advancements as may theretofore have been made"; and that upon the remarriage of the widow the whole of the estate should pass to the children of P. H. Trout, deceased, share and share alike, subject to the dower and distributive rights of the widow, as fixed by the laws of this state in case of intestacy, each of the children, however, accounting for such advancements as may theretofore have been made. The decree further declares that the widow in declining to qualify as executrix surrendered none of the independent powers given by the will, except those relating strictly to the office of executrix.

The Corporation Court further adjudged that "under a proper construction of the will, while the estate of said P. H. Trout, deceased, is not vested in said widow as trustee, yet the powers given to the said widow are vested in her as trustee, and are, therefore, subject to the control and supervision of the court, although the court does not undertake to designate at this time the circumstances under which this control will be exercised further than to say that said powers must be exercised by the widow in good faith, and without arbitrary discrimination. And it appearing from the will that the testator makes clear the just desire that his children enjoy, as near as possible in equal degree, his estate, and that advancements shall be made to each of them as circumstances may from time to time require, the court doth further adjudge, order and decree that in making such advancements to any one of the children the said widow shall make the same equally to each of said children without discrimination, unless there are, or should hereafter be, some circumstances that are in effect reasons in law (apart from the personal inclination of the widow) for such discrimination.

"And it appearing to the court from the answer of said widow that she has heretofore advanced to William B. Trout, Hugh H. Trout and Olivia B. Staples the sum of $5,000 each, and that no advancement has been made to Catherine G. Pratt or P. H. Trout, Jr., and that there are no circumstances which would require or justify advancements to be made to one of said children that would not apply to each of said children alike, the court doth therefore further adjudge, order and decree that the said Olivia B. Trout do forthwith advance and pay to the said Catherine G. Pratt the sum of $5,000, and she is also ordered to pay to P. H. Trout, Jr., the sum of $5,000 whenever he shall request that said sum be paid to him, provided that there is now in the hands of the widow, available for this purpose, corpus of the estate which will enable her to make these payments; and if there is not, then she will make these payments as soon as there has been paid over to her by the administrator sufficient funds to enable her to do so out of said corpus; and all advancements hereafter made shall be made equally unto each of said children until the further order of the court, unless there are reasons in law which would justify a different course of dealing with the advancement, and apart from the personal inclination of the trustee."

From this decree an appeal was taken by the administrator, the widow, and all of the children except Catherine Pratt, who is the sole appellee.

We are of opinion that the will vests in Mrs. Trout the whole estate of her husband during her life or widowhood. Similar language has been construed in a number of cases by this court, but we shall find it necessary to refer to only two of them.

In *Rhett and Wife* v. *Mason and Others,* 18 Gratt. 541, a testator devised all his estate to his wife "for her maintenance and support, and for the maintenance and support of our children, during her life and widowhood. In the event of her marriage, she is to be restricted to her dower and distributary share as in case of intestacy." It was held that, "upon the language

of the clause, the widow is entitled absolutely during her widowhood to the whole profits of the estate; and there is no trust for the children." Judge Moncure was of the opinion that the language just quoted afforded "incontestible evidence that the testator intended to give his wife the entire income and profits of his estate, to do with as she pleased during her widowhood."

In *Vaughan* v. *Vaughan,* 97 Va. 322, 33 S. E. 603, the will was as follows: "I do hereby bequeath to my wife, Emma Lee Vaughan, and to my children, all of my property of every kind, real and personal, and do hereby appoint my wife my sole executrix, without security, as long as she shall remain my lawful widow; should she marry again, the minor children to choose guardians, and my wife, in that event, to take a child's part, to be hers as long as she lives, and at her death to be distributed amongst my children then living." It was held that "the wife takes a fee simple in the whole of the real estate, and the absolute title to the whole of the personal property, liable to be defeated by her remarriage, the children being mentioned as the motive for the gift. It was contended in that case that the widow and children took a joint estate in the property; while the contention of the appellee was that she took the entire estate, a fee simple in the reality, and an absolute property in the personality, subject to the limitation in case she should marry again; and that, unless she should marry again, the children took no estate under the will in the property of the testator. Judge Riely, delivering the opinion of the court, says: "If the testator had stopped at the end of the first clause, 'I do hereby bequeath to my wife, Emma Lee Vaughan, and to my children, all my property of every kind, real and personal,' if this stood alone, and constituted all that related to the gift, it could not be doubted that she and the children would have taken a joint estate in all of the property. This would be the plain and natural import of the language. It would be difficult to use plainer or more explicit language than the above to express the intention, where the gift of a joint estate was the object of the tes-

tator. The testator, however, did not end the disposition of
his property with the first clause, but went on to express him-
self further with regard to its disposition, and in the subsequent
clause used language which negatives the idea that he intended
to give the children a joint estate along with his wife. If it
was his intention to give his property jointly to his wife and
children, then she in that case would simply take an equal
share with each of the children—that is, a child's part. The
testator left five children, and her interest would be one-sixth. ·
But the will provides that if his wife should marry again, then,
in that event, she is only to have a child's part. It is a plain
deduction from this provision that the testator intended by it to
reduce and diminish very materially the estate he had given to
his wife in the previous clause of the will, if she should marry
again."

Counsel for appellee seek to distinguish *Rhett* v. *Mason* from
the present case, because in that case it was held that the re-
marriage of the widow operated to restrict and diminish her
interest in her husband's estate, while in the will under con-
sideration the testator expressly declares that the provision with
respect to her remarriage was not to be understood as any re-
straint upon her, or any disapproval of her so doing; but this
we apprehend not to be a proper interpretation of what the
testator meant. Having given to his wife the whole of his
estate, real and personal, until her remarriage, and reducing
her interest in that event to what the law allows to a widow,
was without doubt a diminution of the value of what she was to
take under the will; and when the testator says that this pro-
vision is not to be understood as a restraint upon her, he means
that he does not intend it as a restraint upon her remarriage,
but that she was free to do as she pleased, but for reasons which
he was sure she would understand and appreciate the act would ·
result in her taking not a life estate in the whole of his prop-
erty, real and personal, after the payment of debts, but only
so much as the law allows to a widow.

We are, therefore, of opinion that Mrs. Trout was entitled during her widowhood to the whole of the rents and income of the estate, and that with respect to the rents and income there was no trust for the benefit of the children.

We are of opinion that the court was plainly right in holding that the widow, by declining the executorship, surrendered none of the powers given to her under the will, except those relating strictly to the office of executrix.

Evidence was introduced that the testator lived in the city of Staunton; that he was the neighbor and friend of Dr. Francis Stribling, who died and whose will was probated in the Corporation Court of Staunton, and construed in a suit brought for that purpose in the Circuit Court of Augusta county; that testator was familiar with the provisions of that will, and expressed himself as highly pleased with the construction placed upon it by the court; that the will of the testator was an exact copy of the Stribling will in all material respects; and that the testator desired the same construction to be placed upon his will as had been placed upon that of Dr. Stribling. Having admitted this evidence, the Corporation Court was of opinion, for reasons which are filed with the record, that the evidence admitted with respect to the will of Dr. Stribling and the construction given to it should not modify the conclusions which had already been reached with respect to the proper construction of the will under consideration.

Without prolonging this opinion by a recapitulation of the views expressed by the Corporation Court upon this point we shall content ourselves with a concurrence in the conclusion reached by the learned judge, who, guided and controlled by *Rhett* v. *Mason, supra,* was of opinion that the widow was entitled absolutely, during her widowhood, to the whole profits of the estate.

This brings us to the real point at issue between the parties, which arises upon that provision in the decree which declares that the testator makes clear the just desire that his children

shall enjoy, "as near as possible in equal degree, his estate, and that advancements shall be made to each of them as circumstances may from time to time require," and that "in making such advancements to any one of the children the said widow shall make the same equally to each of said children without discrimination, unless there are, or should hereafter be, some circumstances that are in effect reasons in law (apart from the personal inclination of the widow) for such discrimination."

The bill makes no charge that the widow, in the exercise of her discretion, acted fraudulently or in bad faith, and states no facts which should call into activity the powers of a court of chancery to control a trustee in the exercise of a discretionary power. The bill relies wholly upon the proposition that the widow was not authorized to advance or pay to any one or more of the children, at any time, any more than his or her equal share of the corpus or the usufruct of the estate; and that the mere fact that the widow saw fit to make an advancement to one child operated of its own vigor to create a right in all of the children to demand an equal advancement, which a court of equity would enforce; and this view seems to have prevailed in the decree complained of; for the court says that in making such advancements to any one of the children the widow shall make the same equally to each of the children, without discrimination, unless there are circumstances which justify a discrimination. The will declares that the widow is desired "to make advances or give such aid to our children as circumstances may from time to time require." Whether or not the circumstances required an advancement to a child was left to the discretion of the widow, regulated in its exercise, it is true, by the provision that she should keep an account of the advancements "so as that they shall enjoy as nearly as possible in equal degree the estate I may leave"; not that they shall enjoy the advancements in an equal degree, but that the child receiving the advancement shall be charged with it, so as to establish equality in the ultimate distribution of the estate, and

taking care not so to diminish the estate as to deprive the widow herself of an income sufficient to supply the wants of herself and those children who should remain with her. The testator seems to have felt the most implicit confidence in his wife, and to have trusted her discretion unreservedly; for he provides further that if in her opinion the comfort of any one of the children should seem to require it "she may, by will, deed or other instrument, appoint a trustee or trustees to whom the estate she may advance as aforesaid, or which may be distributed after her death, shall be entrusted for the use of such child or children, to be governed by such regulations or provisions as she in her discretion may provide."

Under the terms of this will we think that he who invokes the aid of the court to regulate and control the discretion with which the widow was clothed must set forth facts and circumstances which will call into activity the power of the court to regulate the broad discretion conferred upon the trustee—must show that the trustee has acted in bad faith, or, as to some matter, abused the confidence reposed in her by her husband. That she was clothed by this will with discretionary power cannot be doubted. If she must make advances equally to all of the children, or show reasons satisfactory to a court of chancery for the discrimination which she has exercised, that would deprive her of all discretion, and substitute in the place of it the discretion of the chancellor, who in all such cases would be required to sit in judgment upon the sufficiency of the facts and circumstances relied upon.

In Perry on Trusts, section 510, it is said: "In early times courts assumed jurisdiction and control over discretionary powers in trustees, and compelled trustees to execute them, or the court itself executed the powers in such manner as it judged most beneficial for the *cestui que trust;* but this jurisdiction is now repudiated, and courts will not exercise a mere discretionary power, either during the lifetime of the trustees or after their death or refusal to execute it."

Section 511. "If the trustees exercise their discretionary powers in good faith and without fraud and collusion the court cannot control or review their discretion. Nor will a bill be entertained to compel the execution of a mere discretionary power. The refusal of a trustee to exercise such a power is no breach of trust for which he can be removed, though he gives no reason for his refusal, and though the execution of the power would appear to be proper and beneficial to the estate. But while the court cannot interfere with a discretion honestly exercised, a party interested in property subject to the discretion of a trustee has a right to institute a bill for a discovery of the property, and also of all the acts of the trustee, and the reasons for the acts, in order that it may be seen whether the discretion of the trustee is honestly exercised or not. And if the administration of the trust is thus rightfully brought within the jurisdiction of the court the power may be required to be exercised under the eye of the court, though the exercise of it must still remain in the discretion of the trustee, and not in that of the court. . . . The trustee cannot, however, exercise his discretion from any fraudulent, selfish or improper purposes, nor can he refuse to exercise a discretionary power for any such purposes; nor can the power be executed in an illusory or collusive manner. And if he acts, or refuses to act, upon such grounds, the court will interfere and give a remedy to the parties injured by the fraudulent act, or refusal to act, not for the purpose of controlling the discretion of the trustee, but to relieve the parties from the consequences of an improper exercise of the discretion; and if the trustee refuses to exercise his discretion from selfish and interested motives, as where he declines to give his consent to a sale, marriage, or settlement, the court may compel him to assent."

In *Read* v. *Patterson,* 44 N. J. Eq. 211, 14 Atl. 490, reported also in 6 Am. St. Rep. 777, with a note by Judge Freeman, the same doctrine is maintained. "A court of equity will examine into the conduct of a trustee in the execution of his discretionary

powers, and will assume control over the trustee's conduct, and
if need be, will take upon itself the execution of the trust.   But
the court will exercise this prerogative with great caution, and
will not displace the trustee from exercising his functions,
unless, upon a consideration of the reasons and grounds upon
which he has acted, it appears that he has abused his trust, and
that his acts in the premises have not been within the limits of a
sound and honest execution of the trust."  The note to that case
states that "Formerly courts of equity supervised and controlled
the exercise of discretionary powers by trustees.  At the present
time this authority is universally denied.  But the discretion of
trustees may, without impropriety, be likened to that of judges.
It is not an arbitrary discretion.  It does not include the unre-
strained power to do what the trustee pleases.  To extend it
that far is to make it a means of destroying the trust which it
was intended to aid and maintain.  The trustee, instead of doing
merely what, in his present circumstances, he chooses to do, in
deference to his interests or inclinations, is to do that which his
honest, disinterested judgment approves or ought to approve.
He must not act under the impulses of fraud, collusion or self-
interest."

The opinion of Judge Simonton in *Bound* v. *South Carolina
Railway Co.*, 50 Fed. 853, is in entire accord with the law as
thus stated.   In the course of the opinion he says: "No actual
fraud or collusion is charged.  The objection to the action
upon the part of the trustees is that it was dictated or controlled
by self-interest.   It is alleged that the trustees, Barnes and
Sloan, used their discretion in disregard of the interest of the
holders of first consolidated mortgage bonds, against their in-
terest in fact, and in the interest of junior securities, of which
Sloan was a large holder, and for whom Barnes was a trustee
under the second mortgage, as well as a holder of bonds under
this second mortgage.  The inquiry is were they biased by their
interest?"  And further on, after discussing the facts, it is said:
"It is difficult to escape the conclusion that the trustee, owners

and guardians of junior securities, unconsciously it may be, were influenced by their own personal interest, and were blinded as to the interest of their *cestui que trust.*" That language indicates a plain abuse of the trust and brings that case clearly within the principle stated in Perry on Trusts, and *Read* v. *Patterson, supra.*

In the case before us there is no fraud or collusion suggested, no charge that the trustee was acting in bad faith or with a view of promoting any selfish interest, and there is no fact or circumstance from which any such inference could be drawn. We are, therefore, of opinion that this record does not present a case in which the court could rightfully stretch out its hand to control the discretion with which the testator had seen fit to clothe his widow.

The decree of the Corporation Court must be reversed.

*Reversed.*