# CANSLER v. UNKNOWN HEIRS OF CHAIRS et al.— 250 S. W. (2) 579.

Eastern Section.    November 14, 1951.

Petition for Certiorari denied by Supreme Court, June 7, 1952.

Ely & Ely, of Knoxville, for appellant.

Hobart F. Atkins, of Knoxville, for appellees.

McAMIS, J. The bill in this case was filed by Charles W. Cansler, executor under the will of Emma T. Chairs, deceased, dated August 18, 1949. Mrs. Chairs, a retired school teacher, died at the age of 63 years at the home of James G. Beck and wife in Knoxville, Tennessee, on March 15, 1950. The bill seeks a construction by the court of Section 4 of the will providing;

"Fourth, I hereby give and devise my real property at 910 E. Church St., Knoxville in trust to the Executor of my estate who shall convey it to the person or persons who shall stay with me *in my home* continuously during my last illness, it being my wish and will that only the person or persons who will do this are to be rewarded with this property, and the Executor is to determine the person or persons who have complied with such provision."

We have italicized the words giving rise to the present controversy. Complainant executor, although having filed the bill for a construction of the will, strenuously insists upon a literal application of the words "in my home", while Mr. and Mrs. Beck insist that the Chancellor correctly held that Mr. and Mrs. Beck, under a proper construction of the will, having in mind the underlying purpose of the testatrix, are entitled to the property, notwithstanding tthe fact they they never lived with the testatrix in her home at 910 E. Church Street.

The bill named as defendants, in addition to the defendants James G. Beck and wife, Mrs. Lou Emma Browder, another claimant to the property, and the unknown heirs of Emma T. Chairs. Publication was made for the

unknown heirs but none appeared to defend the bill and Mrs. Browder has not appealed from the holding of the Chancellor that she is not entitled to the property. The contest here is between the executor and Mrs. Beck.

Prior to August, 1949, Mrs. Chairs made her home at 910 E. Church Street but frequently stayed at the home of the Becks who were old acquaintances. She was also their guest frequently on long automobile trips. In 1949, Mrs. Chairs' health began to fail. She suffered with heart trouble, high blood pressure and creeping paralysis of one of her hands. At the date of the will, August 18, 1949, she was living at 910 E. Church Street and for a period of about six weeks thereafter was attended by Mrs. Browder, who was a nurse. In October, 1949, Mrs. Browder found that she could no longer remain in the home with Mrs. Chairs and on October 13, 1949, Mrs. Chairs closed her home at 910 E. Church and moved into the home of Mr. and Mrs. Beck where she remained until her death on March 15, 1950.

We gather from the record that, after making her will, Mrs. Chairs attempted to persuade a number of her friends and acquaintances to come into her home and live with her. These efforts were unsuccessful. She had no relatives to whom she could turn for assistance and the record, we think, sustains the insistence that after moving into the home of the Becks she considered it her home. The record shows that she was provided with two rooms and a bath and took her meals as a member of the Beck family. She was waited upon and cared for by Mrs. Beck until her death.

It is apparent from what has been said that Mrs. Beck meets every requirement of the will except that she did not live in the home of the testatrix. There is no question but that her services were continuous during the last

illness of the testatrix, and, immediately following her death, the executor construed the will in a manner to effectuate a devise to Mrs. Beck. Later, after Mrs. Browder had asserted a claim to the property, he filed the bill in this case for instruction as to his duties and for a proper and final construction of the will. He admits that he discussed with the testatrix his duties as to conveying the property to the person or persons entitled to receive it under the will about the time she moved into the home of the Becks and explained to Mrs. Chairs that, although not on friendly terms with the Becks, he, the Executor, had no preference as to whether the property should go to them or to some other person—that he would as soon convey it to them as anyone else. He denies, however, that he had in mind the question of a proper construction of the will at the time of this conversation.

It is not insisted that this clause of the will is void for uncertainty. Nor is there any question raised as to the admissibility of parol evidence offered in support of the construction adopted by the Chancellor. The case is presented as one purely of construction, the executor insisting that, under the terms of the devise, his present interpretation and construction that Mrs. Beck is not entitled to receive the property should prevail over any construction adopted by the courts; but that, if mistaken in this, the court erred in not holding the clause inoperative since the record shows without dispute that no one lived in the home of the deceased and cared for her there continuously during her last illness.

A short answer to the first contention is that the executor himself filed the bill in this case seeking a construction of the will. He cannot now assume the incon-

sistent position that the court is without power to do what he has asked it to do.

■ A further answer is that the executor is to be guided by what he finds in the trust instrument and not by his own personal views as to its meaning. He must exercise his discretionary powers fairly and impartially.

■ ■ We quote a clear statement of the controlling principle, taken from Restatement, Trusts, Section 187, Comment J:

"(T)he court will interfere if the trustee acts in a state of mind not contemplated by the settlor. Thus, the trustee will not be permitted to act    *    *    * from motives other than the accomplishment of the purpose of the trust, or ordinarily to act arbitrarily without the exercise of his judgment."

Another text statement, apropos here, is:

"It is apparent    *    *    *    that equity is prepared to assert such control over discretionary powers as is necessary to prevent the frustration of the fundamental intent of the Settlor    *    *    *    If the trustee determines the size of the cestui's benefit    *    *    *    * without examining into the facts    *    *    *    or if the Trustee refuses to use his discretion at all, the cestui is not receiving that which the Settlor intended him to have, and the Court should and does interfere and award the cestui as nearly as possible that which the Settlor contemplated was to be the benefit he was to obtain from the Trust." Bogart on Trusts and Trustees, Vol. 3, Section 560.

■ The discretion reposed in a trustee is said to be similar to that reposed in judges. It is not an arbitrary discretion and does not include the unrestrained power to do what the trustee pleases. He must do what his honest, disinterested judgment approves or ought to ap-

prove. Coffee v. Ruffin, Ex'r, 44 Tenn. 487, 4 Cold. 487; Read v. Patterson, 44 N. J. Eq. 211, 14 A. 490, 6 Am. St. Rep. 877; Frye v. Burke, 57 Ohio App. 99, 12 N. E. (2d) 152; Neel v. Clark, 193 S. C. 412, 8 S. E. (2d) 740; Trout v. Pratt, 106 Va. 431, 56 S. E. 165, 8 L. R. A., N. S., 398.

We have found no clearer enunciation of the rule than in the Coffee case, supra, where our Supreme Court said: ''It can make no difference what latitude of discretion may be given a Trustee, or anyone occupying a fiduciary relation; he is bound to exercise such discretion in good faith, and may be restrained from its fraudulent or abusive exercise.''

We do not mean to imply that the executor in this case has acted fraudulently or that he has consciously acted arbitrarily. The authorities cited demonstrate, however, that he must be guided by a purpose to carry out the fundamental intent and purpose of the testatrix.

▮ Passing to a construction of the will, we must bear in mind the general rule that the intention of a testator is not to be allowed to fail entirely merely because it cannot be carried out in the precise manner contemplated by the testator. The will should be construed in a manner to take effect as far as possible if the result produced is one which it would be reasonable to assume the testator intended to accomplish, whether his full intention could be given effect or not. 57 Am. Jur. 745, Wills, Section 1146

▮ The question of what person, if any, is entitled to a testamentary gift to those who should care for the testator in his last days depends upon the specific provisions of the will, construed in the light of the circumstances shown as to the testator's situation and affairs. 57 Am. Jur. 764, Wills, Section 1168.

■ Whether or not the testatrix, in this case, regarded the Beck home as her own home so as to bring it within the terminology of the will, we think a strict literal construction of the words "in my home" should not be followed if to do so would defeat the purpose which reason dictates she intended to accomplish. By the clause under consideration the testatrix intended to compensate the person or persons who should give her companionship and the attention she would need during her last illness. It may be that she expected these services to be rendered in her own home but can it be supposed that her desire and purpose to recompense her benefactor would be less if, due to circumstances, it seemed advisable that they be rendered in the home of the benefactor? We think not. We think the Chancellor's construction accords with the dominant purpose of the testatrix and, under settled principles of construction, is correct.

We find no error and it results that the assignments are overruled and the decree affirmed with costs. The cause will be remanded for such further action as may be found necessary.

Hale and Howard, JJ., concur.