John W. ALEXANDER, et al.,
Plaintiffs/Appellees,

v.

Alma NELSON, et al.,
Defendants/Appellants.

Court of Appeals of Tennessee,
Middle Section.

Sept. 4, 1991.

Rehearing Denied Sept. 25, 1991.

Permission to Appeal Denied by
Supreme Court Jan. 21, 1992.

W. Howell Forrester, Pulaski, for defendants/appellants.

Joe F. Fowlkes, Pulaski, for plaintiffs/appellees.

## OPINION

CANTRELL, Judge.

The primary question in this case is whether a testamentary trustee with the power to sell the trust property to a family member "for such price and upon such terms as he thinks best" is authorized to sell the property for less than the fair market value.

In 1957, George Alexander of Giles County died leaving twelve surviving children and a will disposing of his earthly possessions. The will named the testator's son Clyde as executor of the estate and trustee of a trust created by the will. The pertinent sections of the will provide:

ITEM III: I give, devise and bequeath all the real estate of which I die seized and possessed unto my son, Clyde Alexander, as Trustee, for the following uses and purposes, to-wit:

My said Trustee shall take charge of my real estate and shall keep the taxes and insurance paid and the property in repair and he is authorized to rent or lease said real estate to any person satisfactory to him, either a stranger or one of [sic] more of my children, and from the rentals he will pay out any debts that I may owe which have not been satisfied out of the personal property and any expenses necessary in the way of up-keep, insurance and taxes, and when the proceeds from said rentals amount to as much as $500.00, then he will divide said

amount among my heirs at law under the laws of distribution of the State of Tennessee. My said Trustee is given the fullest and broadest powers in the management and control of my real estate and his judgment and decision shall be final in all matters.

My said Trustee shall not have the right to sell said real estate to a stranger in blood, but he shall have the right to sell my said real estate to any one or more of my children and he is authorized to sell said property to one or more of my children for such price and upon such terms as he thinks best and he is authorized to execute and deliver to such purchaser or purchasers a good and sufficient deed, and he will thereupon divide the proceeds of such sale among my heirs at law.

If a sale is not made as above authorized, my said real estate shall be kept in tact under Trusteeship so long as any of my children live, and upon the death of my last surviving child, then said property shall pass in fee simple to my heirs at law as of that date.

ITEM IV: I hereby nominate and appoint my son, Clyde Alexander, as Executor of this my last will and testament and relieve him from giving bond, and confirm his appointment as Trustee and expressly relieve him from giving bond as such, and in the event he predeceases me, then my next oldest child shall act as Executor without bond with all the authority herein conferred upon the Executor herein named, and if my said son, Clyde Alexander, predeceases me or dies before the trust herein created has been wound up, then my next oldest child shall succeed him as Trustee and act without bond and with all the powers herein conferred upon him, and thereafter my oldest child shall succeed to the place as Executor and Trustee made vacant by death or resignation and act without bond.

Apparently Clyde Alexander did not take any action with respect to the family farm, a tract of approximately 150 acres in rural Giles County. Clyde moved to Idaho and died in October or November of 1978. Two of the other brothers ran cattle on the farm for several years and rented it out to deer hunters. Those two brothers died in 1988 leaving Dimple Coffee as the next oldest child and she was appointed trustee of the trust by the Probate Court of Giles County on December 28, 1988.

In August of 1989, Ms. Coffee and Alma Nelson, the only other remaining child of George Alexander, filed a petition in the Giles County Chancery Court seeking to sell the property and divide the proceeds among George Alexander's heirs. Several of Ms. Coffee's nieces and nephews opposed the partition suit and one of them made an offer to buy the property for $22,000.00. The chancellor, however, dismissed the action, holding that under the will the property could only be sold to one of George Alexander's children and that the court would not approve a sale to one of the children for less than "adequate" consideration.

The trustee then transferred the farm to Alma Nelson for $22,000.00 and tendered the proceeds to the heirs. Some of George Alexander's grandchildren refused to accept the tendered proceeds and filed this action to set aside the deed to Alma Nelson. The basis for the action was an assertion that the fair market value of the property was greatly in excess of the amount received by the trustee. The court below found that the farm had a fair market value of approximately $48,000.00 and set aside the deed.

I.

■ We agree with the trial judge that the evidence shows the farm has a fair market value of approximately $48,000.00. The real question, however, is whether, under the terms of the will, the trustee could sell the farm to one of the surviving children for a price substantially less than that.

The discretion given the trustee by the will seems to be absolute. The testator's words were: "For such price and upon such terms as he thinks best." We are persuaded, however, that even terms as

broad as these do not give the trustee the absolute power to deal with the property in an arbitrary manner. The trustee's discretion must be exercised in a reasonable way. "He must do what his honest, disinterested, judgement approves or ought to approve." *Cansler v. Unknown Heirs of Chairs,* 35 Tenn.App. 631 at 635, 250 S.W.2d 579 at 581 (1952).

In *Coffee v. Ruffin,* 44 Tenn. 487 (1867), a will vested the executor with the power to sell any of the testator's property "either at public or private sale, on such terms as he may think proper." Nevertheless, the court said:

> The fact, that certain general discretionary powers were, by the Will, conferred upon the Executor, under which he had the power to dispose of the property as he thought best, can make no difference as to these rules, or the rights of the parties, in the view we have taken of the case; hence we do not deem it necessary to enter upon a discussion of the question as to how far a Trustee may be controlled in the exercise of discretionary powers with which he has been clothed, further than to announce that a Court of Chancery will interpose and prevent such a fraudulent exercise of such power, as will amount to a breach of the trust and confidence reposed in him. It can make no difference what latitude of discretion may be given a Trustee, or any one occupying a fiduciary or confidential relation; he is bound to exercise such discretion in good faith, and may be restrained from its fraudulent or abusive exercise. James D. Ruffin was not only clothed with large powers, and a latitudinous discretion given him in the exercise of these powers; but he took upon himself certain solemn and responsible duties, and those duties can not be avoided or lessened, or relieved against, by the fact that a wide field of discretion was given him, in the manner, and as to the time, of their performance. It was his duty to have protected the interests of the cestui que trust; and to have defeated every attempt to sacrifice her interests; ....

44 Tenn. at 516–517.

We think these excerpts from the Tennessee cases state a rule that is almost universally followed. In Bogert on *Trusts,* 5th Ed., p. 324, the author says:

> In some cases the trust instrument gives the trustee "uncontrolled and absolute discretion" to do or refrain from doing certain acts or to decide certain questions. While here the trustee is probably somewhat less subject to the review and control of the court, the words are not given their literal meaning. It is said that the trustee must act "in the state of mind contemplated by the testator", which would seem to mean he must give some consideration to the fundamental purposes of the trust. Extraordinary decisions preventing accomplishment of a primary purpose of the settlor will not be tolerated. But if the trustee has used his judgment in good faith and has considered the settlor's objectives and the effect of his action on the beneficiaries, the court will not overturn the trustee's decision and direct a different result.

In *Carrier v. Carrier,* 226 N.Y. 114, 123 N.E. 135 (1919), a case where the trustee's discretion was "absolute and uncontrolled," the court, nevertheless, said that even that broad grant of power did not mean that the discretion could be recklessly or willfully abused.

While it might be argued that the testator's primary intent was to favor his children and keep his property in the family, it also must be admitted that the trustee owed a duty to the beneficiaries of the trust (the heirs). By the time of the events in this record, some of the grandchildren of the testator had become the beneficiaries of the trust. We think they are entitled to be treated fairly and not arbitrarily.

We do not say that trustees must always get fair market value for the property they sell. The circumstances in each case must be considered. If, for instance in this case, the facts showed that no family member could pay the fair market value for the property, the trustee might have been justified in taking less. We think, however, that accepting a price approximately one-

half of the farm's value was arbitrary and the chancellor was justified in setting aside the conveyance.

The decision in the present appeal does not preclude the trustee from petitioning the court for an adjudication of the price for which the property may properly be sold to a child of the deceased.

## II.

 The trustee says the plaintiffs are estopped from protesting the sale for $22,000.00 because one of their number offered to buy the farm at that price sometime prior to the sale. We cannot see how the doctrine of estoppel applies here. Assuming that the offer could be construed as an opinion of one of the heirs as to the property's worth, there is no evidence that the trustee relied on that representation to her detriment, and it does not appear why the other heirs should be bound by that opinion.

## III.

The trustee counterclaimed in the court below for damages from one of the heirs for possessing the property for a period of time without paying any rent to the trustee. The chancellor in dismissing the original complaint did not deal with the counterclaim. Since the case is here de novo, we will consider the claim made by the trustee.

We think that the proof fails to show any claim for damages due against the counter-defendant. The farm has very little rental value. It is used strictly for grazing cattle and has been rented for an unspecified price to local hunters. The proof shows that the counter-defendant rented the farm for the 1989 year from one of his uncles who was in possession of the farm until his death late in 1988. The counter-defendant also paid the taxes for a two year period sometime prior to the time of his uncle's death. Therefore, we think his contributions on behalf of the estate probably equal the rental value of the farm for the years in which he has used it. Therefore, the trustee is not entitled to a judgment for damages.

The judgment of the court below is affirmed and the cause is remanded to the Chancery Court of Giles County for any further proceedings necessary. Tax the costs on appeal to the appellant.

TODD, P.J., and KOCH, J., concur.