IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
January 27, 2005 Session

## IN RE: ESTATE OF BILLY F. HAWK, JR.

Appeal from the Chancery Court for Hamilton County
No. 02-0723    W. Frank Brown, III, Chancellor

No. E2004-00877-COA-R3-CV - FILED FEBRUARY 28, 2005

This case involves a petition filed by the co-executors of the Estate of Billy F. Hawk, Jr. to approve a sale of real estate partially owned by the Estate. The issue presented is whether the trial court should have approved the private sale. The trial court held that the proposed sale was not in the best interest of all the beneficiaries of the Estate. The proposed buyer appeals. We hold that the trial court's decision was not contrary to the preponderance of evidence, nor was it arbitrary or capricious, and therefore, affirm the trial court's judgment.

**Tenn.R.Civ.P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed;
Case Remanded**

SHARON G. LEE, J., delivered the opinion of the court, in which CHARLES D. SUSANO, JR. and D. MICHAEL SWINEY, JJ., joined.

Michael E. Richardson, Chattanooga, Tennessee, for Appellant William F. Hawk.

W. Jeffrey Hollingsworth and William R. Dearing, Chattanooga, Tennessee, for Appellee Estate of Billy F. Hawk, Jr.

Marvin Berke, Chattanooga, Tennessee, for Appellee Megan D. Hawk.

Stephen M. Goldstein, Chattanooga, Tennessee, Attorney Ad Litem for Appellees, the Minor Beneficiaries of the Estate of Billy F. Hawk, Jr.

### OPINION

On July 22, 2002, the co-executors of the Estate of Billy F. Hawk, Jr., (hereinafter "the Estate"), Sue D. Hawk (the Decedent's widow), and AmSouth Bank filed a petition for approval of the sale of two parcels of real estate. At the time of the petition, the major asset of the Estate was a corporation named Holiday Bowl, Inc. The petition alleged as follows:

As executors, the Petitioners hold title to a one-half undivided interest in a certain parcel of real property of about 101 acres located near Snow Hill Road in Hamilton County, Tennessee. Petitioner, Sue D. Hawk, owns the other one-half undivided interest in this tract. The executors propose to sell 12.786 acres from this parcel of about 101 acres.

As executors, the Petitioners also own all of the voting stock and a majority of the non-voting stock of Holiday Bowl, Inc., a Tennessee corporation. Petitioner, Sue D. Hawk, owns all of the remaining outstanding non-voting stock of Holiday Bowl, Inc. Holiday Bowl, Inc. holds title to 98.5 acres located on Snow Hill Road which is adjacent to the parcel of about 101 acres described above.

William F. Hawk, a son of the decedent, desires to purchase both parcels described above under the terms and conditions set out in Real Estate Sales Agreements attached . . . to this Petition. The attached agreements are by their terms subject to the approval of this Court. The basic terms are that William F. Hawk will purchase the two parcels for Nine Hundred Twenty Thousand Dollars ($920,000), to be paid in cash at closing. The purchase price of the 12.786 acres is One Hundred Fifty Thousand Dollars ($150,000); the purchase price of the 98.5 acres is Seven Hundred Seventy Thousand Dollars ($770,000).

\*        \*        \*

Since the executors have voting control over Holiday Bowl, Inc., they control that corporation's ability to sell its assets. As a result, the proposed sale by Holiday Bowl, Inc., is in essence a proposed sale by the Estate.

On July 23, 2002, the trial court appointed a guardian ad litem for the minor parties at interest and any contingent and unborn beneficiaries of the Estate. The guardian ad litem filed an answer objecting to the proposed sale. One of the beneficiaries, Megan D. Hawk, answered individually and objected to the proposed sale as contrary to her best interest.

On December 4, 2003, the co-executors filed with the court a document styled "Ownership Change Notice" which stated as follows:

At the time this matter was initially filed, Holiday Bowl, Inc. owned one of the tracts that is the subject of this proceeding (the tract of about 98 acres). The corporate stock of Holiday Bowl, Inc. was recently sold. In connection with the sale, a partial stock redemption was accomplished in order to transfer ownership of such property to the shareholders. As a result, the parcel is now owned by the Estate

of Billy F. Hawk, Jr., as to an 81.25% interest, and Sue D. Hawk as to an 18.75% interest.

The trial court heard the petition on December 15, 2003. The only persons to testify were Sue D. Hawk and Donald L. Tindell, a real estate appraiser who submitted appraisals of the value of the property proposed to be sold. The trial court ruled that the sale was not in the best interest of all the beneficiaries and dismissed the petition. William F. Hawk, a son of the decedent, has appealed this decision. The co-executors of the Estate have filed an appellee's brief arguing that the trial court correctly decided this case.

In this non-jury case, our review is *de novo* upon the record of the proceedings below, but the record comes to us with a presumption of correctness as to the trial court's factual determinations which we must honor unless the evidence preponderates against those findings. Tenn. R. App. P. 13(d); *Wright v. City of Knoxville,* 898 S.W.2d 177, 181 (Tenn.1995); *Union Carbide Corp. v. Huddleston,* 854 S.W.2d 87, 91 (Tenn.1993). The trial court's conclusions of law, however, are accorded no such presumption. *Campbell v. Florida Steel Corp.,* 919 S.W.2d 26, 35 (Tenn.1996); *Presley v. Bennett,* 860 S.W.2d 857, 859 (Tenn.1993).

Much of the controversy in this case centers around Mr. Tindell's appraisals of the two parcels of real estate. The proposed sale price was the same as the appraised value. Those opposing the sale argued that the co-executors, who requested and paid for the appraisals, limited the scope of Mr. Tindell's appraisals such that the appraised prices of the real estate did not accurately reflect the true market value. They also asserted that the co-executors should have listed and placed the property on the open market before accepting an offer from one of the beneficiaries of the Estate. Mr. Tindell testified in relevant part as follows:

> Q: Mr. Tindell, when you were asked to make this appraisal, how did–what specifically did they ask you to do?
> A: Just to value the property as its present use, in its present state.
> Q: Is that the way you usually make an appraisal?
> A: Well, we get asked to make appraisals for potential use or as developed or–in this instance it was just to be appraised as its present use, present zoning.
> Q: Are most of your appraisals made at the highest and best use of the property?
> A: A lot of them are, yes, sir.
> Q: And what is the difference between what you do when you make an appraisal of highest and best use and you make an appraisal as the property sits now or as it is now presently used?
> A: Well, we appraise property to their potential use many times, which would be their highest and best use as well as their present use. It's just all according to how the request is ordered.

Q: Okay. If the property were placed on the open market, what would
be the standard that you would appraise it for?
A: The highest and best use.
Q: And that would be the true market value?
A: It would be potential market value.

       \*       \*       \*

Q: Okay. Now, Mr. Tindell, would the beneficiaries benefit from the
sale of the land being opened to the public first to bring a higher price
rather than accepting, approving an original offer to a beneficiary
without first seeking outside buyers?
A: You would probably find out fairly quick, open market typically
brings the highest price.

Mr. Hawk argues that the co-executors were granted broad discretionary powers under the will to sell property of the estate, and asserts that "the standard of review for the Chancellor in determining [whether] the sale should be approved, is whether the trustees have exercised the discretion given to them under the Will in a reasonable manner." Mr. Hawk relies on the case of *Alexander v. Nelson,* 825 S.W.2d 106 (Tenn.Ct.App. 1991), wherein the court addressed the question of whether the trustee in that case, under the terms of the will, could sell the property at issue to one of the surviving children for a price substantially less than fair market value. The *Alexander* court stated as follows:

We think these excerpts from the Tennessee cases state a rule that is almost universally followed. In Bogert on *Trusts,* 5th Ed., p. 324, the author says:

In some cases the trust instrument gives the trustee "uncontrolled and absolute discretion" to do or refrain from doing certain acts or to decide certain questions. While here the trustee is probably somewhat less subject to the review and control of the court, the words are not given their literal meaning. It is said that the trustee must act "in the state of mind contemplated by the testator", which would seem to mean he must give some consideration to the fundamental purposes of the trust. Extraordinary decisions preventing accomplishment of a primary purpose of the settlor will not be tolerated. But if the trustee has used his judgment in good faith and has considered the settlor's objectives and the effect of his action on the beneficiaries, the court will not overturn the trustee's decision and direct a different result.

       \*       \*       \*

While it might be argued that the testator's primary intent was to favor his children and keep his property in the family, it also must be admitted that the trustee owed a duty to the beneficiaries of the trust (the heirs). By the time of the events in this record, some of the

-4-

grandchildren of the testator had become the beneficiaries of the trust. We think they are entitled to be treated fairly and not arbitrarily.

*Alexander v. Nelson,* 825 S.W.2d 106, 108 (Tenn.Ct.App. 1991).

We have no disagreement with *Alexander,* and agree that it is applicable to the extent it holds that a trustee's discretion to deal with property of the trust must be exercised reasonably, and that all the beneficiaries must be treated fairly and not arbitrarily. But there is an additional factor in this case not present in *Alexander.* Regardless of the question of the power and discretion of the co-executors to dispose of property under the will, the parties specifically provided by contract that the sale would be contingent upon the Chancery Court's approval, as follows:

> Approval by Court. This Agreement shall be subject to approval by the Hamilton County Chancery Court. If such approval is not obtained, then this Agreement shall stand canceled without further liability on the part of Buyer or Seller.

Sue D. Hawk testified without contradiction that at the time her son, William F. Hawk, approached her with an offer to buy the property several months after his father's death, "I told him that I felt as though we could do this. It [Holiday Bowl, Inc.] was in need of cash access at the time, and so we agreed to do this." She stated that Holiday Bowl, Inc. needed an infusion of cash to pay some outstanding debts. Shortly before the hearing of this case, however, the corporate stock of Holiday Bowl was sold. Counsel for the co-executors in closing argument stated, "[c]ircumstances certainly have changed with the selling of Holiday Bowl. The estate will candidly admit that if given the opportunity to sign the contracts today, it would not do so."

The trial court, in holding that the proposed sale was not in the best interest of all the beneficiaries, stated the following:

> I think when you put the appraiser in the box and say that he or she can only do one thing, that is, appraise it as is instead of the highest and best use, you kind of limit the responses that can be obtained.
>
> I think those reasons, plus the fact that no one has given me an explanation yet why the contract on its face shows that Ms. Hawk would receive more money than the estate for the 12.786 acres, the Court must dismiss the petition, and that's the basis of my decision.
>
> I think when you put it in my lap, I've got to see what is in the best interest of all the parties, and those parties include minor beneficiaries. And the Court has an extra special duty, I think, to look after minor beneficiaries.

The duty to which the court alluded was discussed by the Supreme Court in the case of *Nashville Trust Co. v. Lebeck,* 270 S.W.2d 470 (Tenn.1954) as follows:

With reference to the disposition of the property of infants and lunatics, i.e. the sale or lease of such property, the Chancellor stands *in loco parentis*, Ricardi v. Gaboury, 115 Tenn. 484, 89 S.W. 98, 100, and in authorizing 'the making of a lease of the property of a minor', must consider that which 'will be most beneficial to him.' Ricardi v. Gaboury, supra. Regardless of the pleadings, when minors and lunatics are before the court, the protection of their property rights and interests is said to be 'matters of conscience' and fall 'strictly within the scope of the Chancellor's extraordinary jurisdiction.' Sec. 8, Bispham Principles of Equity.

*Nashville Trust Co. v. Lebeck*, 270 S.W.2d 470,475 (Tenn.1954).

We are of the opinion that the trial court's decision in this case was within its broad discretion, not arbitrary or capricious, and not contrary to the preponderance of the evidence. We caution that this opinion should not be construed as a requirement that an appraiser provide any certain kind of appraisal in order for a court to approve the sale of real estate by a trust; "[t]he circumstances in each case must be considered." *Alexander,* 825 S.W.2d 106, 108 (Tenn.Ct.App. 1991). Under the specific circumstances presented by this case, we do not find error in the trial court's decision.

The judgment of the trial court dismissing the petition is, therefore, affirmed. Costs on appeal are assessed to the Appellant, William F. Hawk.

_____

SHARON G. LEE, JUDGE

-6-